1   Peter Goldstein [SBN 6992]
    PETER GOLDSTEIN LAW CORP
2   peter@petergoldsteinlaw.com
    10161 Park Run Drive, Suite 150
3   Las Vegas, Nevada 89145
    Telephone:     (702) 474-6400
4   Facsimile:      (888) 400-8799

5   *Attorney for Plaintiffs*
    *ROCHELLE SCOTT, individually, and as co-special*
6   *administrator of the estate of ROY ANTHONY SCOTT;*
    *and FREDRICK WAID, as co-special administrator*
7   *of the estate of ROY ANTHONY SCOTT*

8

9                   **UNITED STATES DISTRICT COURT**

10           **FOR THE DISTRICT OF NEVADA (LAS VEGAS)**

11   ROCHELLE SCOTT, individually, and as co-       Case No.   2:20-cv-1872
     special administrator of the estate of ROY
12   ANTHONY SCOTT; and FREDRICK WAID, as           **COMPLAINT FOR DAMAGES**
     co-special administrator of the estate of ROY
13   ANTHONY SCOTT,                                 1.  **Unreasonable Search and Seizure –**
                                                        **Excessive Force – Violation of the Fourth**
14                           Plaintiffs,               **Amendment (42 U.S.C. §1983)**
                                                    2.  **Unreasonable Search and Seizure –**
15   vs.                                               **Denial of Medical Care – Violation of the**
                                                        **Fourth Amendment (42 U.S.C. §1983)**
16   LAS VEGAS METROPOLITAN POLICE                  3.  **Substantive Due Process (42 U.S.C.**
     DEPARTMENT; KYLE SMITH, individually;             **§1983) Violations of Fourteenth**
17   THEODORE HUNTSMAN, individually; and              **Amendment – Deprivation of Familial**
     DOES 1-10, inclusive,                             **Relations**
18                                                  4.  **Municipal Liability for Unconstitutional**
                             Defendants.               **Custom or Policy (42 U.S.C. § 1983)**
19                                                  5.  **Disability Discrimination § 504 of the**
                                                        **Rehabilitation Act of 1973, 29 U.S.C. §**
20                                                     **794(a), Title II of the Americans with**
                                                        **Disabilities Act, 42 U.S.C. §12131; et seq.**
21                                                  6.  **Municipal Liability—Failure to Train**
                                                        **(42 U.S.C. § 1983)**
22                                                  7.  **Municipal Liability-Ratification (42**
                                                        **U.S.C. §1983)**
23                                                  8.  **Battery (Wrongful Death)**
                                                    9.  **Negligence (Wrongful Death)**
24
                                                    *EXHIBIT "A," Redacted Death Certificate*
25                                                  *EXHIBIT "B," Order Appointing Co-Special*
                                                    *Administrators*
26
                                                    **DEMAND FOR JURY TRIAL**
27

28

**COMPLAINT FOR DAMAGES**

Plaintiff ROCHELLE SCOTT, individually and as co-special administrator of the estate of ROY ANTHONY SCOTT and FREDRICK WAID, as co-special administrator of the estate of ROY ANTHONY SCOTT, for their Complaint against Defendants KYLE SMITH, THEODORE HUNTSMAN, LAS VEGAS POLICE DEPARTMENT (LVMPD) and DOES 1-10, inclusive, allege as follows:

**INTRODUCTION**

1.     This case involves the pressure positional asphyxiation death of ROY ANTHONY SCOTT ("SCOTT" or "DECEDENT"), who was a 65-year-old African-American man who wighed 140 pounds at the time of his death and known to be suffering from paranoid schizophrenia – a lifelong mental disability causing paranoid delusions, profound fear and anxiety, making him extremely suspicious and apprehensive. On March 3, 2019, SCOTT died shortly after being subjected to a pressure restraint while prone on the sidewalk and gravel area in front of his apartment in the custody of two LVMPD OFFICERS (hereinafter "HUNTSMAN" and "SMITH") one of whom kneeled on SCOTT'S neck and back for over ninety (90) seconds as SCOTT cried and pleaded to be placed in the patrol car. SCOTT said "please" sixty-three (63) times over eight (8) minutes before becoming motionless, after which SCOTT never received chest compressions or CPR of any kind until Medic-West Ambulance arrived approximately nine (9) minutes later. SCOTT died on the ground, handcuffed, pleading with HUNTSMAN and SMITH for water and to just take him into the patrol car.

2.     This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the death of ROY ANTHONY SCOTT.  Plaintiff ROCHELLE ANTHONY SCOTT is DECEDENT'S surviving daughter and sues in her individual capacity and as co-special administrator of DECEDENT'S estate together with FREDRICK WAID.

**PARTIES**

3.     At all relevant times, SCOTT was an individual residing in the County of Clark, Nevada.  At all relevant times, SCOTT suffered from and/or was diagnosed with mental and

2

emotional impairments, including but not limited to, paranoid schizophrenia, making him a protected individual under the Americans with Disabilities Act (ADA).

4.       SCOTT is survived by his daughter, Plaintiff ROCHELLE SCOTT, who is residing in the County of San Bernardino, State of California. ROCHELLE SCOTT sues in her individual capacity as surviving daughter of DECEDENT and seeks wrongful death damages under federal and state law.

5.       Plaintiff ROCHELLE SCOTT also files suit in her capacity as court-appointed co-special administrator of DECEDENT'S estate.   In this capacity, ROCHELLE SCOTT seeks all permissible damages under Nev. Rev. Stat. §41.085.

6.       Plaintiff FREDRICK WAID ("WAID") is a resident of the State of Nevada, Las Vegas.  WAID sues in his capacity as court-appointed co-special administrator of the estate of ROY ANTHONY SCOTT together with Plaintiff ROCHELLE SCOTT.  ROCHELLE SCOTT and WAID are hereinafter collectively referred to as "CO-SPECIAL ADMINISTRATORS."

7.       At all times relevant herein, Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT (hereinafter "LVMPD") was, at all times mentioned, and is a political entity and political subdivision of Clark County and the State of Nevada, formed and operating pursuant to the Nevada Revised Statutes and, at all times relevant hereto, is the Police Department with jurisdiction throughout Clark County, Nevada.  LVMPD is a law enforcement agency entrusted to provide thorough and accurate investigation, reporting, and police protection throughout the City of Las Vegas, Nevada, and unincorporated Clark County, Nevada.  LVMPD's practices as demonstrated in the bodycam footage in this case (and other cases including *Brown v. Lotero*) constitute de facto policies of improperly arresting and restraining individuals including individuals with disabilities; and in displaying deliberate indifference to the safety and serious medical needs of individuals with disabilities. At all times relevant herein, LVMPD employed all Co-Defendants as yet unknown POLICE OFFICER DOES 1-5, officers at the scene and DOES 6-10, supervisors, inclusive.

8.       Defendants KYLE SMITH ("SMITH") and THEODORE HUNTSMAN ("HUNTSMAN") (hereinafter collectively "LVMPD Defendant(s)") were at all times mentioned in this complaint, LVMPD police officers employed by Defendant LVMPD.  SMITH and

3

HUNTSMAN were the arresting LVMPD officers on the date of DECEDENT'S death, March 3, 2019. SMITH and HUNTSMAN are sued in their individual capacities only.

9.      At all relevant times, LVMPD was the employer of each of LVMPD Defendants who were at all times herein mentioned LVMPD Police officers. Defendants DOES 1-5 were at all times mentioned herein, LVMPD police officers; DOES 6-10 were managerial, supervisorial, and policymaking employees of LVMPD.

10.     At all relevant times, SMITH, HUNTSMAN and DOES 1-5 were duly authorized employees and agents of LVMPD, who were acting under the color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant LVMPD.

11.     At all relevant times, SMITH, HUNTSMAN, and DOES 1-10 were duly appointed officers and/or employees or agents of LVMPD, subject to oversight and supervision by LVMPD's elected and non-elected officials.

12.     In doing the acts, failing and omitting to act as hereinafter described, Defendants SMITH, HUNTSMAN, and DOES 1-10 were acting with the implied and actual permission and consent of LVMPD and its managerial employees.

13.     At all times mentioned herein, each and every LVMPD Defendants were the agents of each and every other LVMPD Defendant and had a legal duty to oversee and supervise the hiring, conduct, and employment of each and every other LVMPD Defendant.

14.     The true names of defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs are ignorant of the true identities of Defendants, DOES 1-10, inclusive, and therefore sues them by such fictitious names.  The Plaintiffs allege that DOES 1-10 may be liable to Plaintiffs for the acts, omissions, and damages alleged in this action.   Plaintiffs will seek leave to amend this complaint to show their true names and capacities when ascertained.

## JURISDICTION AND VENUE

15.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth

Amendments of the United States Constitution and §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et. seq. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367 and other statutory provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state laws.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Clark County, Nevada.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

17.     Plaintiffs repeat and reallege each and every allegation of this Complaint set forth hereinabove with the same force and effect as if fully set forth herein.

18.     On March 3, 2019, SCOTT called 911 for assistance and reported suspicious persons at or around his apartment, including, one he believed was armed with a saw.

19.     SMITH and HUNTSMAN were LVMPD patrol officers who responded to SCOTT's 911 call and arrived at SCOTT'S apartment at the 3600 block of El Conlon Avenue at approximately 3:00 a.m. on March 3, 2019.

20.     Upon their arrival, SMITH and HUNTSMAN did not observe any suspicious persons or anyone armed with a saw at or around SCOTT'S apartment complex.

21.     SMITH and/or HUNTSMAN knocked on the door of SCOTT's apartment on the second floor of the complex.  HUNTSMAN and/or SMITH attempted to speak with ROY SCOTT through the door of his apartment.  SCOTT did not come outside.  During this time, HUNTSMAN and/or SMITH asked SCOTT, "have you been diagnosed with any mental diseases?"  Meanwhile, SMITH or HUNTSMAN made a call on his radio requesting that a call be made to SCOTT as he was not coming out of his apartment.  HUNTSMAN and/or SMITH are heard calling a sergeant who is heard telling them that it is not an urgent matter and to leave.  Nevertheless, SMITH and HUNTSMAN used their flashlights to point them into SCOTT's window from the ground floor waving them rapidly in an effort to make SCOTT open his door.

22.     A short time thereafter, SCOTT emerged from his apartment and started to slowly descend the stairs from his second-floor apartment to the ground floor where the LVMPD Defendant officers were standing.  SCOTT had his cell phone in his hand.

23.     Upon doing so, HUNTSMAN and/or SMITH pulled a gun on SCOTT, they each pointed both a gun and a flashlight directly at SCOTT, and told him to "put that down" as SCOTT descended the stairs slowly, he asked, "what am I supposed to do?" HUNTSMAN or SMITH told SCOTT, "I ain't fucking with you put that down" referring to a pipe that SCOTT had already dropped or his cell phone.

24.     HUNTSMAN or SMITH pointed the flashlight and gun directly at SCOTT to intimidate and scare SCOTT as he emerged from his apartment and started to come down the stairs to speak with the officers peacefully.

25.     Plaintiffs allege on information and belief that LVMPD Defendants were aware of prior radio calls to SCOTT'S apartment and were aware that SCOTT had been peacefully taken into custody for legal 2000 holds before and that he suffered from a mental illness.

26.     When SCOTT reached the ground floor, Officers SMITH or HUNTSMAN continued to point his flashlight at SCOTT and directed SCOTT into a position with his back against a wall, near a corner, underneath another stairwell in the apartment complex. The LVMPD Defendant officer no longer using a flashlight asked SCOTT, if he had any weapons on him.  With his back still against the wall by a corner and flashlight on his face, SCOTT slowly reached into his pocket and handed the requesting LVMPD Defendant officer a kitchen knife, who took possession of the knife.

27.     As one LVMPD Defendant officer continued to shine the flashlight at SCOTT, both LVMPD Defendants told SCOTT to "turn around," whereupon SCOTT told them, "I am paranoid schizophrenic," he asked LVMPD Defendants twice, as calmly as he could if they "could (you) just put (me) in the car please."  SCOTT complained about "shining the light in my face." SMITH or HUNTSMAN continued to ask SCOTT to "turn around," and they would "take the light off" if he turned around.  SCOTT told SMITH or HUNTSMAN, "I am paranoid, I can't turn around." SCOTT continued to tell them, "I am paranoid."

28.     With his back still against the wall by a corner, SCOTT continued to tell SMITH and HUNTSMAN he is "paranoid," one of whom insisted to SCOTT, "you are fine," SCOTT replied, without yelling, "I'm not fine … I'm not fine."  SCOTT told SMITH and HUNTSMAN he did not have any other weapons, but SMITH and HUNTSMAN said he did not believe SCOTT.

29.     SMITH and/or HUNTSMAN approached SCOTT.  SCOTT held out his arms and stood still.  SMITH or HUNTSMAN took hold of one of SCOTT's arms, then both SMITH and HUNTSMAN approached him and started to push SCOTT away from the wall, with either SMITH or HUNTSMAN taking hold of his other arm to place both SCOTT'S arms behind his back in an effort to handcuff him, whereupon SCOTT started to beg and plead with SMITH and HUNTSMAN and stated as follows (verbatim from in the bodycam):

> "Please sir, please, please sir, please, sir please…why...why are all you doing this?...why are you doing this …What ... what are you doing? Sir, what are you doing? Please…please sir, what are you doing…please, sir, no, stop it please, stop it please, please sir, please sir, please sir, please, no sir, please, don't please, please sir, please, please, leave me alone sir, leave me alone, leave me alone, leave me alone, leave me alone, no, leave me alone, please sir, leave me alone, leave me alone sir, please let me go home, leave me alone, please, please sir, leave me alone, please, please sir, why are you all doing this to me, why are you doing this to me, why are you doing this to me, please sir, please sir, please, please don't, please leave me alone sir, please leave me alone, please, please sir leave me alone, leave me alone, please sir, please leave me alone, sir please leave me alone, please sir, will you please leave me alone, please, please, please sir, please leave me alone, please, leave me alone sir, please sir, please, leave me alone, sir please, please sir, leave me alone, sir please, leave me alone, please sir, why are you doing this, please, why are you doing this, please, why are you doing this to me, please sir, please sir, please leave me alone, please, stop!, please leave me alone, sir, please sir, please sir, please officer, please leave me alone, sir please, sir please, please, sir, please, leave me alone, leave me alone, sir, no…

30.     Within about fifteen (15) seconds from the start of SMITH's and HUNTSMAN's efforts to handcuff him, SCOTT fell to the ground and for at least eight (8) minutes thereafter, begged and pleaded with SMITH and HUNTSMAN, saying "please" to the officers' sixty-three (63) times, before SCOTT became still and silent at 12:50 in the 21:57 video/audio tape. The timeline as depicted in bodycam number five shows the following:

- 7 minutes we see the knee in the back of SCOTT'S neck and back;
- 835 The Officer removes his knee on his back. Therefore 1 minute 35 seconds on SCOTT'S back and neck SCOTT is prone on his stomach;
- 11 minutes we see that SCOTT'S feet are not moving, but are slightly involuntarily shaking as if he's having some kind of seizure.
- 1138 SCOTT asks for water and again at 1150
- 1250 SCOTT'S feet are not moving
- 13 minutes SCOTT appears dead
- 14 minutes SCOTT appears dead, but one officer says he's still breathing.
- 15 minutes one officer says he's barely breathing.
- 1511 one officer checks pulse and says expedite medical (now that SCOTT is unconscious)
- 1541 one officer states he's fine. They move him to his side.
- 1611 one officer says wake up now (This is about 3:46 AM and it appears that s SCOTT is dead);
- No Officer ever attempts any CPR.
- 1840. Another officer arrives first officers mention a pipe and a knife.
- 2145 Officer says no pulse.
- 21 minutes officer says he's 421A with a mental diagnosis uses drugs.
- Shortly after AMR arrives and transports SCOTT,
- 2157 AMR doing chest compressions inside the ambulance.

31.   As SCOTT laid on the pavement, SMITH and HUNTSMAN physically struggled with SCOTT, and one of the two (either SMITH or HUNTSMAN), put his full body weight upon SCOTT and placed his knee on SCOTT's neck and back, while SCOTT laid face down on the ground in a prone position with hands behind his back, for at least one minute and thirty-five (35) seconds. This still photo from the body cam shows the knee of one officer on SCOTT'S back.



This still photograph from the body cam shows SCOTT in a prone position with HUNTSMAN or SMITH in the process of putting pressure and full weight to his back and neck.



32.     After either HUNTSMAN or SMITH removes his knee from SCOTT'S neck and back, HUNTSMAN and SMITH roll SCOTT onto his side.  For about two and a half minutes thereafter, SCOTT flayed his legs and moaned. Thereafter, the same officer who had his knee on SCOTT's neck and back asked a witness nearby to run up to SCOTT's apartment to "see if there was an ID or something in there."

33.     During the entirety of the physical struggle and thereafter, despite SCOTT'S multiple requests for assistance and aid, neither SMITH nor HUNTSMAN rendered medical aid or assistance to SCOTT.

34.     Before becoming still and silent, a hand-cuffed SCOTT'S last words were to request water.  Immediately after asking for water, SCOTT'S feet and hands started to involuntarily twitch. A neighbor of SCOTT, who witnessed part of the physical struggle, told HUNTSMAN and SMITH he could get water, to which either HUNTSMAN or SMITH responded "no" they would "wait for medical."

35.     Within thirty (30) seconds of asking for water, SCOTT became still and silent, handcuffed, immobile, on the pavement, lying on his side and silent, either SMITH or HUNTSMAN tapped SCOTT on the shoulder and asked if he was "all right."  SCOTT did not move or make a sound.

36.     Either HUNTSMAN or SMITH told the other officer that SCOTT is "still breathing but I don't know why he is doing what he is doing…he must have had a medical episode or something." SCOTT had not moved or made any sound. Either HUNTSMAN or SMITH stooped down to have a closer look at SCOTT, and checked his pulse, lifted his shirt, and declared "he is breathing, just barely," then walked away.

37.     HUNTSMAN or SMITH tapped SCOTT on the shoulder again trying to arouse him. SCOTT did not move or make any sound.  HUNTSMAN or SMITH said out loud, "he is fine," then immediately used his radio to call in a "possible ED" (excited delirium) and that SCOTT was "currently in a recovery position on the left side."  SCOTT still did not move or make any sound. HUNTSMAN or SMITH repeatedly tried to arouse SCOTT.  SCOTT did not move or make any sound.  HUNTSMAN or SMITH returned again and tried to arouse SCOTT.  HUNTSMAN or SMITH placed a "call (to) sarg."  HUNTSMAN or SMITH is heard talking to his radio and said SCOTT'S "breathing is super faint" and maybe "an ED" and that he is "starting to slow down his breathing."  During this time, HUNTSMAN or SMITH continued to look at SCOTT on the ground but did not render any medical aid or CPR.

38.     Two more LVMPD officers, DOES 1 and 2, arrived at the scene and SCOTT had still not moved or said anything.  None of the four LVMPD officers provided any medical assistance, CPR, or aid to SCOTT.

39.     Either HUNTSMAN or SMITH told the two other LVMPD officers, DOES 1 or 2, that there were two weapons "over there," a kitchen knife and a pipe, pointing to an area behind a wall near a plant which was some distance away from where they had cornered SCOTT.  When DOE 1 or DOE 2 asked either HUNTSMAN or SMITH if SCOTT came out and then "threw the knife" on the side of the wall where that officer was standing, either HUNTSMAN or SMITH replied, "Yeah, he came out and had a pipe and I pulled my gun on him and he dropped the pipe on the stairwell and then we got him over here and he backed himself against the wall and he was standing there not doing anything, told him if he had any other weapons and started to pat him down and goes to his pocket and pulls out a knife." He did not disclose to DOE 1 or DOE 2 that SCOTT gave him the kitchen knife before the pat down.

40.     None to the LVMPD Defendants found other weapons on SCOTT other than the pipe he dropped or the kitchen knife he gave them.

41.     Prior to the arrival of paramedics and after SCOTT became still and silent, SCOTT's hands and feet visibly twitched involuntarily while SMITH and HUNTSMAN stood by without rendering any aid.  Neither SMITH nor HUNTSMAN or any other responding LVMPD officer rendered CPR or other medical assistance to SCOTT at any time.

42.     SCOTT was lying still on his side, silent on the sidewalk, handcuffed for at least another nine (9) minutes before paramedics arrived.  During these nine (9) minutes, HUNTSMAN and SMITH stood around SCOTT's body, alternately touched SCOTT's body, swept coins that fell out of SCOTT's pocket with their feet, checked his pulse, wandered around, returned to check on SCOTT and claimed SCOTT was "still breathing," or "light breathing," or "super-faint breathing," or possible "ED," but did not render aid, CPR or any medical assistance to SCOTT.  SMITH and/or HUNTSMAN tried to arouse SCOTT by calling his name several times and to "wake up."  SCOTT did not move or make any sound.

43.     Upon information and belief, by the time paramedics arrived on the scene, SCOTT was deceased, his body limp and non-responsive.

44.     Upon information and belief, SCOTT died on the sidewalk pavement in front of his apartment, at least nine (9) minutes before paramedics arrived with neither SMITH nor HUNTSMAN or any LVMPD officer including DOE 1 AND 2 rendering any medical aid to SCOTT whatsoever.

45.     Either HUNTSMAN or SMITH told paramedics that SCOTT was a possible "ED." Later, in news reports, LVMPD stated that SMITH and HUNTSMAN suspected DECEDENT experienced "excited delirium" – which is not a recognized condition by the DSM-IV and LVMPD knew that SMITH and HUNTSMAN had little if any medical training.

46.     When arriving paramedics asked how long SCOTT had been unresponsive, either HUNTSMAN or SMITH replied: "probably about 8 minutes."

47.     Paramedics attempted to perform CPR on SCOTT once they had SCOTT in the back of the ambulance but were not able to revive him.

48.     Neither SMITH, HUNTSMAN, any other responding LVMPD officer, or other third party suffered any notable injuries of any kind.

49.     Neither SMITH, HUNTSMAN, any other responding LVMPD officer required any medical attention or hospitalization as they were not injured.

50.     SMITH and/or HUNTSMAN used unreasonable and/or deadly force against DECEDENT by physically struggling with DECEDENT in order to restrain him, failing to accommodate DECEDENT'S disability, taking actions which aggravated his paranoia, failing to de-escalate the situation, physically wrestling with DECEDENT on the ground and placing his weight on SCOTT for at least one minute and 35 seconds of this time either SMITH or HUNTSMAN kneeling with his weight on DECEDENT's neck and back, and failed to provide any assistance for nine (9) minutes between the time SCOTT stopped moving until the time paramedics arrived at the scene.

51.     SMITH and/or HUNTSMAN used unreasonable and ultimately deadly force against DECEDENT, an individual with a known disability, handcuffed DECEDENT, physically struggled with DECEDENT, failed to reasonably accommodate his disability and/or, upon information and belief, took actions and/or inactions which proximately led to DECEDENT'S death.

52.     At the time of the use of force against DECEDENT, including deadly force, LVMPD, SMITH, and HUNTSMAN knew DECEDENT suffered from mental, psychiatric and/or emotional disabilities.

53.     At the time of the use of force, including deadly force, DECEDENT did not otherwise pose an imminent threat of death or serious physical injury to either himself, SMITH, HUNTSMAN and/or DOES 1-5 or any other person.

54.     As a result of the foregoing, DECEDENT suffered intense physical and emotional pain, anguish, distress and despair, and death, including the loss of enjoyment of his life.

55.     Defendants SMITH, HUNTSMAN and DOES 1-5 officers are responsible for the DECEDENT's injuries and death either because they were personally involved, because they were integral participants and/or because they failed to intervene.

///

**FIRST CLAIM FOR RELIEF**
**UNREASONABLE SEARCH AND SEIZURE —VIOLATION OF FOURTH AMENDMENT-EXCESSIVE FORCE-WRONGFUL DEATH (42 U.S.C. § 1983)**
**(CO-SPECIAL ADMINISTRATORS ROCHELLE SCOTT AND FRED WAID v. SMITH, HUNTSMAN and DOES 1-5)**

56.     Plaintiffs repeat and re-allege each and every allegation hereinabove of this Complaint with the same force and effect as if fully set forth herein.

57.     DECEDENT had no arrest warrants outstanding.

58.     DECEDENT did not commit a crime in the presence of SMITH or HUNTSMAN.

59.     DECEDENT did not lunge at or attempt to attack, harm, or strike SMITH, HUNTSMAN, or any person with or without a weapon.

60.     DECEDENT did not verbalize any threat to harm himself to SMITH, HUNTSMAN DOES 1 and 2, or any other person.

61.     Defendant SMITH or HUNTSMAN unreasonably and forcibly physically restrained and struggled with DECEDENT, ignored DECEDENT'S pleas, and knelt on DECEDENT's neck and back for at least one minute and thirty-five (35) seconds.

62.     The unjustified use of excessive force, including deadly force, against DECEDENT by SMITH and HUNTSMAN, deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

63.     The unreasonable use of force, including deadly force, by Defendants SMITH, HUNTSMAN, and DOES 1-5, deprived the DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

64.     As a result of SMITH and HUNTSMAN'S acts and inactions, DECEDENT suffered extreme pain and suffering and suffered a loss of life and of earning capacity.

65.     Plaintiffs, as CO-SPECIAL ADMINISTRATORS of DECEDENT's estate claims, inter alia, funeral, and burial expenses and punitive damages for DECEDENT.

66.     As a result of their conduct and inactions herein, SMITH and HUNTSMAN are liable for DECEDENT's injuries, as well as DOES 1-5, who were integral participants in the excessive force, or because they failed to intervene to prevent these violations.

67.     This use of deadly force was excessive and unreasonable under the circumstances, especially since DECEDENT posed no imminent threat of death or serious physical injury to either SMITH or HUNTSMAN any other person.  Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

68.     The conduct of SMITH, HUNTSMAN, and DOES 1-5 were willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants SMITH, HUNTSMAN, and DOES 1-5.

69.     Plaintiffs, as CO-SPECIAL ADMINISTRATORS of DECEDENT'S estate, seek all permissible damages under Nev. Rev. Stat. § 41.100 and the Fourth Amendment to the U.S. Constitution.

70.     Plaintiffs, as CO-SPECIAL ADMINISTRATORS of DECEDENT'S estate also seek attorney's fees and costs under this claim.

**SECOND CLAIM FOR RELIEF**
**UNREASONABLE SEARCH AND SEIZURE –**
**DENIAL OF MEDICAL CARE – VIOLATION OF THE FOURTH AMENDMENT**
**(42 U.S.C. §1983)**
**(CO-SPECIAL ADMINISTRATORS ROCHELLE SCOTT AND FRED WAID v.**
**DEFENDANTS HUNTSMAN, SMITH, AND DOES 1-5)**

71.     Plaintiffs repeat and reallege each and every allegation hereinabove of this Complaint with the same force and effect as if fully set forth herein.

72.     Pursuant to the Fourth Amendment to the United States Constitution, all law enforcement officers have a duty to provide medical care to persons who are injured while being apprehended and taken into custody and/or to timely summons medical care for these individuals. This includes the duty to either administer medical care or ensure that medical care is promptly

provided.  This also encompasses the requirement that peace officers may not delay an arrestee access to medical care without reason.

73.     DECEDENT was subjected to unreasonable and excessive force in restraint.  Despite his pleading, Defendants SMITH, HUNTSMAN, and DOES 1-5 failed to provide and unreasonably delayed medical care to DECEDENT.  DECEDENT eventually died from the injuries HUNTSMAN, SMITH, and DOES 1-5 caused.  Plaintiffs are informed and thereon believe that DECEDENT suffered great physical and emotional pain while he lay unattended to on the ground in the process of slowly dying, until he died.  Plaintiffs are further informed and thereon believe that the delay and or denial of medical care to DECEDENT contributed to DECEDENT's pain and suffering and contributed to the worsening of his injuries, including his cause of death.

74.     As a result of the conduct of HUNTSMAN, SMITH, and DOES 1-5, they are liable for DECEDENT's injuries because they were either integral participants to the violations of DECEDENT's rights or they failed to intervene to prevent these violations.

75.     The conduct of HUNTSMAN, SMITH, and DOES 1-5 was malicious, oppressive, and in reckless disregard for the rights and safety of DECEDENT and warrants the imposition of exemplary and punitive damages as to HUNTSMAN, SMITH and DOES 1-5.

76.     PLAINTIFFS ROCHELLE SCOTT and WAID as the appointed CO-SPECIAL ADMINISTRATORS of DECEDENT'S ESTATE, bring this claim, and seek both survival and wrongful death damages for the violation of DECEDENT's rights.

77.     Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

**THIRD CLAIM FOR RELIEF**
**SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983)**
**VIOLATION OF FOURTEENTH AMENDMENT –**
**DEPRIVATION OF FAMILIAL RELATIONS**
**(PLAINTIFF ROCHELLE SCOTT v. DEFENDANTS SMITH,**
**HUNTSMAN and DOES 1-5)**

78.     Plaintiffs repeat and re-allege each and every allegation set forth hereinabove of this Complaint with the same force and effect as if fully set forth herein.

79.     DECEDENT'S surviving daughter, ROCHELLE SCOTT, individually, has a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States

Constitution to be free from state actions that deprive of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's familial relationship with her father, DECEDENT.

80.   The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations.   42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

81.   The United States Constitution protects all persons from interference with relationships such as those that attend the creation and sustenance of a family and similar highly personal relationships.   Specifically, the right to be free from unlawful state interference with the familial relationship enjoyed between parents and children is a protected liberty interest rooted in the due process clause of the Fourteenth Amendment.

82.   As a result of the excessive force by SMITH and HUNTSMAN and failure of said other LVMPD Defendants to intervene, DECEDENT died.   The use of deadly force by HUNTSMAN, SMITH, DOES 1-5 under these circumstances was unreasonable, excessive, and shocks the conscience.   Further, HUNTSMAN, SMITH, and DOES 1-5 exhibited deliberate indifference to and reckless disregard for DECEDENT's and Plaintiff ROCHELLE SCOTT'S rights and displayed a purpose to harm DECEDENT unrelated to a legitimate law enforcement objective. In doing so, the conduct of HUNTSMAN, SMITH, and DOES 1-5 constitutes a violation of Plaintiff ROCHELLE SCOTT'S Fourteenth Amendment Substantive Due Process right to free from unlawful state interference with their familial relationship with her father.

83.   As a result of the conduct of HUNTSMAN, SMITH and DOES 1-5, they are liable for DECEDENT's injuries because they were either integral participants to the violations of DECEDENT's rights or they failed to intervene to prevent these violations.

84.   The conduct of HUNTSMAN, SMITH and DOES 1-5 was malicious, oppressive, and in reckless disregard for the rights and safety of DECEDENT and Plaintiff ROCHELLE SCOTT and warrants the imposition of exemplary and punitive damages as to the individual Defendants.

85.     As a direct result of the death of DECEDENT, Plaintiff ROCHELLE SCOTT has suffered the loss of DECEDENT's love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of DECEDENT.  Plaintiff seeks wrongful death damages under this claim.

86.     Plaintiff also seeks attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

**FOURTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM OR POLICY**
**(42 U.S.C. § 1983)**
**(ALL PLAINTIFFS v.  LVMPD and DOES 6-10)**

87.     Plaintiffs repeat and re-allege each and every allegation as set forth hereinabove of this Complaint with the same force and effect as if fully set forth herein.

88.     On and for some time prior to March 3, 2019 (and continuing to the present date), Defendants LVMPD, and DOES 6-10, deprived Plaintiffs of the rights and liberties secured by the Fourteenth Amendment to the United States Constitution in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a)     Employing and retaining as police officers and other personnel, including, SMITH and HUNTSMAN, DOES 1-5, who Defendants, DOES 6-10, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written LVMPD's policies, including the use of excessive and deadly force;

(b)     Of inadequately supervising, training, controlling, assigning, and disciplining LVMPD Police officers, and other personnel, including SMITH and HUNTSMAN, DOES 1-5, whom Defendants LVMPD knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for violence and the use of excessive force, including deadly force;

(c)     By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants SMITH and HUNTSMAN, DOES 1-5, who are Police officers of LVMPD;

(d)     By failing to discipline the LVMPD Defendant Police officers' conduct, including but not limited to, unlawful detention and excessive force;

(e)  By ratifying the intentional misconduct of Defendants, SMITH, HUNTSMAN police officers involved in unreasonable use of excessive force in restraining persons with disabilities and are Police officers employed by Defendant LVMPD;

(f)  By having and maintaining an unconstitutional policy, custom, and practice of detaining and arresting individuals with disabilities, without probable cause or reasonable suspicion, and using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects.  The policies, customs, and practices of DOES 6-10 were done with deliberate indifference to individuals' safety and rights;

(g)  By failing to properly investigate claims of excessive force by LVMPD Police officers;

(h)  By failing to institute appropriate policies regarding constitutional procedures and practices for use of force, including the use of less than lethal force;

(i)  By failing to train officers regarding Fourth Amendment rights of citizens;

(j)  By failing to train officers on the proper use of deadly force;

(k)  By using excessive force against persons and condoning the use of excessive force, and conspiring to cover-up civil rights violations;

(l)  By inadequate training of its officers and other LVMPD employees, including SMITH, HUNTSMAN and DOES 1-10, on the aforementioned issues, including use of deadly force;

(m)  By failing to properly train its officers on how to react when they encounter an individual with mental and/or emotional disabilities;

(n)  By failing to conduct a prompt and thorough investigation into the conduct of Defendants SMITH, HUNTSMAN, and DOES 1-5, and investigation into the circumstances and events surrounding Decedent's death at the hands of SMITH, HUNTSMAN, and DOES 1-5.

(o)  By failing to train officers on how to assess the need for deadly force. To restrain a person who has mental disabilities, failing to deescalate, without assessing the need for continued deadly force shows that LVMPD'S training of SMITH and HUNTSMAN with respect to assessing the need for deadly force is grossly deficient.

(p)  By failing to train officers with respect to crisis intervention and mental health disorders.

(q)  By failing to train officers on not placing vulnerable and compromised individuals on their stomach in a prone position and using their body weight to kneel on such persons affecting their ability to breathe.

(r)   By failing to train officers on when and how to administer CPR.

(s)  By failing to train officers on how to recognize signs of hypoxia.

(t)  By failing to train officers on crisis intervention and de-escalation techniques.

89.     By reason of the aforementioned policies and practices of LVMPD and DOES 6-10, DECEDENT and Plaintiff ROCHELLE SCOTT, were subjected to pain and suffering and loss of life.

90.     Defendants DOES 6-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these Defendants condoned, tolerated, and through actions and inactions thereby ratified such policies.  Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

91.     By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts of all Defendants LVMPD and DOES 6-10, acted with an intentional, reckless, and callous disregard for the life of DECEDENT and Plaintiff's constitutional rights.  Defendants LVMPD and DOES 6-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

92.     Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by all Defendants, were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff.

93.     By reason of the aforementioned acts and omissions of all Defendants, Plaintiff ROCHELLE SCOTT, in her individual capacity as surviving daughter of DECEDENT, has suffered loss of love, companionship, affection, comfort, care, and society and is entitled to damages.  Plaintiff seeks all permissible wrongful death damages under Nev. Rev. Stat. §41.085, and the Fourth Amendment to the U.S. Constitution including, but not limited to, damages for her grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the DECEDENT, and penalties, including, but not limited to, exemplary and punitive damages.

94.     Accordingly, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

95.     As SPECIAL CO-ADMINISTRATOR of Decedent's estate, the Plaintiffs seek all permissible damages under Nev. Rev. Stat. §41.100.

96.     Plaintiffs also seek attorney's fees and costs under this claim.

97.     Plaintiffs seek punitive damages against individual supervisory police officer Defendants.

**FIFTH CLAIM FOR RELIEF**
**DISABILITY DISCRIMINATION**
**§ 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et. seq.**
**(CO-SPECIAL ADMINISTRATORS v. ALL DEFENDANTS)**

98.     Plaintiffs incorporate all foregoing allegations as if fully set forth herein.

99.     DECEDENT suffered from a psychiatric disability, paranoid schitzophrenia.

100.    Upon information and belief, Defendants SMITH and HUNTSMAN knew or should have known that DECEDENT suffered from a psychiatric disability based on his behavior.

101.    Defendants SMITH and HUNTSMAN had an obligation under the Americans with Disabilities Act and the Rehabilitation Act(ADA)to accomodate DECEDENT'S Disability when attempting to effectuate his detention.

102.    Upon information and belief Defendants SMITH and HUNTSMAN did not modify their tactics to account for DECEDENT'S disability and in doing so both failed to reasonably accommodate his disability and discriminated against him based on his disability.

103.    Upon information and belief, LVMPD does not instruct their officers to modify their tactics to effectuate arrest that reasonably accomodates disabilities when dealing with individuals with psychiatric disabilities and by failing to do so discriminated against DECEDENT based on his disability.

104.     The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) & (2).

105.    Title II of the ADA provides: No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity. *Id.* § 12132. Discrimination includes a failure to reasonably accommodate a person's disability. To be a qualified individual with a disability, a person must suffer from a physical or mental impairment that substantially limits that person's ability to perform a major life activity — an activity that the average person in the general population can perform.

106.    Title II of the ADA includes an affirmative obligation that public entities must make accommodations for people with disabilities.

107.    Title II of the ADA mandates a public entity may be liable for damages under Title II of the ADA if it intentionally or with deliberate indifference fails to provide a reasonable accommodation to a disabled person. The failure to provide reasonable accommodation constitutes discrimination against the disabled person. A public entity may not disregard the plight and distress of a disabled person by failing to accommodate his or her needs.

108.    Title II of the ADA mandates that once an entity is on notice of the need for accommodation, it is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation.

109.    Title II of the ADA applies to LVMPD because it is a public entity.

110.    Title II of the ADA applies to police departments.

111.    LVMPD receives federal funding to provide a reasonable accommodation to a disabled persons.

112.    Title II of the ADA requires LVMPD to train its officers in how to deal with physically and mentally disabled individuals.

113.    Title II of the ADA mandates that government agencies, including police officers, must take a disabled person's disability into account by making reasonable modifications of policies and practices where needed to avoid discrimination. 42 U.S.C. Section 12132, 28 C.F.R. Section 35.130(b)(7).

114.    SCOTT'S form of mental illness is a recognized impairment for purposes of the ADA and NRS 433A.115.

115.   SCOTT was disabled under the ADA because his mental illness substantially limited his ability to communicate, to interact with others, and to care for himself.

116.   Defendants SMITH and HUNTSMAN knew or should have known SCOTT was experiencing a severe mental health crisis. SMITH and HUNTSMAN should have known how to accommodate his mental illness by employing de-escalation strategies with the intent of achieving a safe and nonviolent self-surrender. Yet despite this knowledge, and the national mandate to accommodate the disabled, SMITH and HUNTSMAN chose to not to accommodate SCOTT's impairment and chose to apply tactics that made a safe and nonviolent self-surrender impossible.

117.   Defendants SMITH and HUNTSMAN utilized techniques nationally understood to exacerbate and intensify stress and apprehension in the mentally ill. Such practices have long been rejected by police departments when interacting with persons suffering mental impairment. Such practices render it impossible for mentally ill persons to understand and/or to comply with directives and commands and are guaranteed to make a safe and peaceful self-surrender impossible.

118.   Defendants SMITH and HUNTSMAN could have reasonably accommodated SCOTT by engaging in non-threatening communications, respecting his comfort zone, waiting for the arrival of medical assistance and using the passage of time to defuse the situation peacefully rather than encouraging a deadly confrontation.

119.   Defendants SMITH and HUNTSMAN had the time, safety and opportunity to assess the situation and administer a strategy to appropriately accommodate SCOTT because he was not armed with a deadly weapon, and SCOTT wanted to be taken to a facility for evaluation and treatment as a Legal 2000 detainee.

120.   At all times during Defendants SMITH and HUNTSMAN's interactions with SCOTT, accommodation was achievable. Even when an emotionally disturbed individual is asking not to be handcuffed on the ground with the full body weight of male officer on his back when it would be easy to accommodate such a request without endangering the officers' lives. SCOTT was a mentally ill person whose needs required accommodation for his disability.

121.     At all times during Defendants SMITH and HUNTSMAN's interactions with SCOTT, they knew or should have known that because of his impairment, they were required to exert greater effort and caution to take control of the situation through less intrusive means.

122.     By failing to accommodate SCOTT's mental health disability, Defendants acted with discriminatory intent and deliberate indifference to his federally protected rights.

123.     The conduct alleged herein was done in reckless disregard of SCOTT's constitutionally protected rights; justifying an award of punitive damages as against the individually named Defendants.

124.     By reason of the aforementioned acts and omissions, Plaintiffs were caused to incur funeral and related cremation expenses.

125.     By reason of the aforementioned acts and omissions of Defendants and each of them, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, and society.

126.     Accordingly, Defendants and each of them are liable to Plaintiffs for compensatory damages in an amount according to proof at trial.

127.     Plaintiffs seek wrongful death and survival damages under this claim.

128.     Plaintiffs also seek statutory attorney fees under this claim.

129.     Defendants LVMPD are vicariously liable to Plaintiffs for damages for the foregoing acts of SMITH and HUNTSMAN and the emotional distress negligently inflicted by Defendants SMITH and HUNTSMAN upon Plaintiffs because they were acting under color of law, employed by LVMPD and within the course and scope of their employment as police officers for the LVMPD.

130.     As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental, emotional anguish, distress, and pain and have been injured in mind and body.

131.     Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT and will continue to be so deprived for the remainder of their natural lives.

132.     Plaintiffs are therefore entitled to damages for their mental and/or emotional distress as a result of the conduct of SMITH and HUNTSMAN above mentioned.

133.    Plaintiffs also seek attorney's fees and costs.

**SIXTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY – FAILURE TO TRAIN (42 U.S.C. § 1983)**
**(PLAINTIFFS v. DEFENDANTS LVMPD and DOES 6-10)**

134.    Plaintiffs repeat and re-allege each and every allegation in paragraphs hereinabove of this Complaint with the same force and effect as if fully set forth herein.

135.    While acting under the color of state law and within the course and scope of their employment as police officers for LVMPD unlawful use of excessive force, and DOES 1-5, killed DECEDENT, who did not intentionally strike or threaten anyone, deprived DECEDENT of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including the right to be free from unreasonable search and seizure and excessive force.

136.    The training policies of the Defendant LVMPD were not adequate to train its police officers, including, but not limited to, SMITH, HUNTSMAN, and DOES 1-10, with regard to using deadly force.  As a result, LVMPD police officers, including Defendants SMITH, HUNTSMAN, and DOES 1-5, are not able to handle the usual and recurring situations with which they must deal, such as confronting individuals with mental and emotional disabilities, properly giving commands and warnings to such individuals, and using deadly force.  These inadequate training policies existed prior to the date of this incident and continue to this day, including, but not limited to:

(a)    Failure to train officers on how to approach or handle individuals who have mental and/or emotional disabilities so as to prevent their death by officer-involved shooting;

(b)    Failure to train officers on whether or not a suspect posed an immediate threat to officers which Decedent did not;

(c)    Failure to train officers about what constitutes active resistance to arrest, what constitutes probable cause for arrest; what constitutes the totality of circumstances for use of force;

(d)    Failure to train officers on the reasonableness of a particular use of force based on the perspective of a reasonable officer at the scene rather than with 20/20 vision of hindsight;

(e)    Failure to train officers on the calculus of reasonableness which embodied an allowance for the fact of split-second judgment about the amount of force that is necessary for the particular situation involving Decedent;

(f)     Failure to train officers on what actions are "objectively reasonable" in light of the facts confronting them, without regard to their underlying intent or motivation;

(g)     Failure to train regarding crisis intervention, mental disabilities, and CPR.

(h)     Failure to train officers to not place vulnerable persons in a prone position and then place weight on them causing positional asphyxia.

137.    The Defendants LVMPD was deliberately indifferent to the known or obvious consequences of its failure to train and/or supervise its police officers, including SMITH, HUNTSMAN, and DOES 1-5, adequately with regard to critical situations.  This inadequate training includes failing to teach officers to restrain from the use of excessive force upon confronting a person with mental and/or emotional disabilities and training for suspects with such disabilities and to prevent their death in custody of police officers using methods known to cause death.

138.    Defendants LVMPD has numerous in-custody deaths.  Many of these deaths involve individuals who suffer from mental and/or emotional disabilities.  LVMPD was and is aware that there is a reoccurring problem with their officer's use of deadly force.    In other words, LVMPD was aware that there was a problem involving numerous officer-involved deaths of individuals in custody, which could have been avoided had the officers employed well known and accepted police tactics and techniques and to avoid having to unnecessarily use excessive and deadly force in the exercise of the decision to take individuals with disabilities into custody and not place persons, especially older, protected persons in a prone position.

139.    LVMPD was aware that failure to implement adequate training with regards to their officers would result in LVMPD continuing to have numerous unreasonable officer-involved deaths of individuals with disabilities while these individuals are in the custody of or otherwise being restrained by LVMPD.

140.    The training that LVMPD police officers, including Officers SMITH and HUNTSMAN should have received with regard to the use of deadly force against individuals with disabilities includes training that officers should have knowledge of when to use or not to utilize excessive force, when to take individuals with disabilities in a prone position.

141.    On information and belief, the training provided to LVMPD police officers, including, LVMPD Defendants SMITH, HUNTSMAN, and DOES 1-5, and DOES 6-10, with regard to using deadly force against individuals, including, but not limited to, individuals with mental and/or emotional disabilities, did not include training that officers should    avoid forcible taking disabled individuals into custody to get these individuals hand-cuffed and in-custody by using less than lethal force when confronting individuals with such disabilities unless they have a reasonable fear of death or great bodily injury, especially when their sergeant told them to leave.

142.    The training that LVMPD police officers, including LVMPD Defendants SMITH, HUNTSMAN, and DOES 1-5, and DOES 6-10 received with regards to using deadly force against individuals was inadequate because it has continuously resulted in numerous unreasonable uses of deadly force by LVMPD police officers including deaths of individuals while being restrained by LVMPD or in custody of LVMPD annually (going back at least five (5) years).  Further, the training that LVMPD police officers, DOES 1-10, including LVMPD Defendants SMITH, HUNTSMAN, and DOES 1-5, received with regard to using deadly force against individuals with disabilities were inadequate because it failed to implement well known and accepted police tactics and techniques for dealing with individuals without having to use deadly force against them.  These well-known and accepted police practices and techniques are routinely used to train law enforcement from other agencies such as the Los Angeles Police Department, the Los Angeles County Sheriff's Department, and the California Highway Patrol.  Further, most police officers properly train their officers in crisis intervention.

143.    The failure of Defendant LVMPD and DOES 6-10, to provide adequate training with regard to when to use or not use deadly force, caused the deprivation of the DECEDENT'S constitutional rights by Defendants SMITH, HUNTSMAN, and DOES 1-5.  In other words, the Defendant LVMPD'S failure to train is so closely related to the deprivation of the DECEDENT'S rights as to be the moving force that caused the ultimate injury.

144.    By failing to provide adequate training to LVMPD'S police officers, including Defendants SMITH, HUNTSMAN, and DOES 1-10, acted with an intentional, reckless, and callous disregard for the life of DECEDENT, his constitutional rights and that of the Plaintiff.    All

1  Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive

2  and unconscionable to any person of normal sensibilities.

3       145.    By reason of the aforementioned acts and omissions of Defendants LVMPD and

4  DOES 1-10, Plaintiff ROCHELLE SCOTT suffered loss of love, companionship, affection, comfort,

5  care, society, and future support of DECEDENT.

6       146.    Accordingly, Defendants LVMPD and DOES 6-10, each are liable to Plaintiff for

7  compensatory damages under 42 U.S.C. § 1983.

8       147.    Plaintiff SCOTT seeks all permissible wrongful death damages under Nev. Rev. Stat.

9  §41.085, including, but not limited to, damages for her grief, sorrow, loss of probable support,

10  companionship, society, comfort and consortium, and damages for pain, suffering of the

11  DECEDENT, any penalties, including, but not limited to, exemplary and punitive damages against

12  individual defendants.

13       148.    Plaintiffs, as CO-SPECIAL ADMINISTRATORS of Decedent's estate, seek all

14  permissible damages under Nev. Rev. Stat. § 41.100 and the Fourth Amendment to the U.S.

15  Constitution.

16       149.    Plaintiffs also seeks statutory attorneys' fees and costs under this claim.

17                              **SEVENTH CLAIM FOR RELIEF**
                  **MUNICIPAL LIABILITY— RATIFICATION (42 U.S.C. § 1983)**
18                          **(PLAINTIFFS v. LVMPD and DOES 6-10)**

19       150.    Plaintiffs repeat and reallege each and every allegation as set forth hereinabove of this

20  Complaint with the same force and effect as if fully set forth herein.

21       151.    LVMPD Defendants SMITH, HUNTSMAN and DOES 1-5, acted under color of law

22  when they restrained DECEDENT in manner so as to cause his death and failed to render immediate

23  medical assistance to DECEDENT.

24       152.    The acts and/or failure to act of Defendants SMITH, HUNTSMAN, DOES 1-5, and

25  DOES 6-10 deprived Plaintiff of his particular rights under the United States Constitution.

26       153.    DOES 6-10 acted under color of state law.

27       154.    DOES 6-10 acted or purported to act in performance of official duties under state,

28  county, or municipal law, ordinance or regulation.

155.   DOES 6-10 had final policymaking authority from Defendant LVMPD concerning the acts and/or failure to act of Defendants SMITH, HUNTSMAN, and DOES 1-5,

156.   LVMPD and DOES 6-10 ratified the actions and failure to act of SMITH, HUNTSMAN, including their use of excessive and/or unreasonable force in the restraint of DECEDENT.   That is, DOES 5-10, including supervisors, knew of and specifically made a deliberate choice to approve SMITH and HUNTSMAN's acts and the basis for it.

157.   Upon information and belief, Defendants SMITH, HUNTSMAN, LVMPD and DOES 1-5 knew that DECEDENT posed no threat of a clear and present danger of death or serious bodily injury to himself or others.

158.   Defendants DOES 6-10 ratification of the acts and/or omissions of SMITH, HUNTSMAN, include, but are not limited to:

(a)   On information and belief Defendants SMITH and/or HUNTSMAN are still employed with LVMPD;

(b)   DOES 5-10 failed to conduct a prompt and through investigation of the events involving DECEDENT'S death and the conduct of SMITH and/or HUNTSMAN;

(c)   Defendant LVMPD, upon information and belief, did not do anything or take any action with respect to DECEDENT'S death, resulting in de facto ratification;

(d)   Defendant LVMPD allowed the use of excessive force in the restraint of individuals with disabilities, such as DECEDENT;

(e)   Failure to follow proper protocol in dealing with individuals with mental and/or emotional disabilities;

(f)   Allowing untrained officers to tell the media that arrestees die from excited delirium.

(g)   Condoned the placement of vulnerable, disabled persons in a prone position with body weight on top of them resulting in positional asphyxia.

159.   Upon information and belief, Defendant LVMPD approved of the officers' actions.

160.   Plaintiff ROCHELLE SCOTT seeks all permissible wrongful death damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for her grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the DECEDENT, any penalties, including, but not limited to, exemplary and punitive damages.

161.     Plaintiffs, as CO-SPECIAL ADMINISTRATORS of DECEDENT'S estate, seek all permissible damages under Nev. Rev. Stat. § 41.100 and the Fourth Amendment to the U.S. Constitution.

162.     Plaintiffs also seek statutory attorney fees and costs under this claim.

**EIGHTH CLAIM FOR RELIEF**
**BATTERY – WRONGFUL DEATH (Nevada State Law Claim)**
**(PLAINTIFFS v. ALL DEFENDANTS)**

163.     Plaintiffs repeat and re-allege each and every allegation as set forth hereinabove of this Complaint with the same force and effect as if fully set forth herein.

164.     Defendants SMITH, HUNTSMAN, and DOES 1-5, while working as Police officers for LVMPD, and acting within the course and scope of their duties, used unreasonable and excessive force when they intentionally made decision to restrain and take DECEDENT into custody.

165.     In particular, Defendants SMITH, HUNTSMAN and DOES 1-5 intentionally restrained and took DECEDENT into custody, unnecessarily engaging in physical struggle with DECEDENT, thereby used unwarranted, unreasonable excessive and deadly force leading to his death. DECEDENT did not consent to being held in a manner that would lead to his death while being restrained and in custody of LVMPD.

166.     As a result of the action and inactions of Defendants SMITH, HUNTSMAN and DOES 1-5, DECEDENT suffered severe pain and suffering and ultimately died from his injuries. Defendants SMITH, HUNTSMAN had no legal justification for using said force, including deadly force, against DECEDENT and said Defendants' SMITH and HUNTSMAN'S exercise of force while carrying out their officer duties was an unreasonable use of deadly force.

167.     As a direct and proximate result of Defendants' misconduct and omissions as alleged above, DECEDENT died and Plaintiff ROCHELLE SCOTT suffered extreme and severe mental anguish and pain and have been injured in mind and body.  Plaintiff ROCHELLE SCOTT has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT and will continue to be so deprived for the remainder of her natural life.

168.    Defendant LVMPD is vicariously liable for the wrongful acts of Defendants SMITH, HUNTSMAN and DOES 1-5, because they were acting under color of law and within the course and scope of their employment as police officers for the LVMPD.

169.    The conduct of SMITH, HUNTSMAN were malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff and DECEDENT, entitling Plaintiffs to an award of exemplary and punitive damages.

170.    Plaintiff ROCHELLE SCOTT seeks all permissible wrongful death damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for her grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the DECEDENT, any penalties, including, but not limited to, exemplary and punitive damages.

171.    Plaintiffs also seeks statutory attorney fees under this claim.

### NINTH CLAIM FOR RELIEF
### NEGLIGENCE – WRONGFUL DEATH (Nevada State Law Claim)
### (PLAINTIFFS v. ALL DEFENDANTS)

172.    Plaintiffs repeat and re-allege each and every allegation as set forth herein above of this Complaint with the same force and effect as if fully set forth herein.

173.    The actions and inactions of the Defendants were negligent and reckless, including but not limited to:

(a)     The failure to properly and adequately assess the need to approach DECEDENT and use deadly force against DECEDENT or to restrain DECEDENT by engaging in deadly physical struggle with DECEDENT;

(b)     The negligent tactics and handling of the situation with DECEDENT, including deadly restraint of DECEDENT while he was in crisis and/or delusional, paranoid state and the failure to allow DECEDENT time calm down, to comply with their commands;

(c)     The negligent use of deadly and excessive force against DECEDENT;

(d)     The negligent use of deadly force, including the negligent use of physical restraint procedures known to cause death and substantial bodily harm;

(e)      The failure to properly train and supervise employees, both professional and non-professional, including, handling situations involving individuals with mental and/or emotional disabilities so as to prevent their death in custody by procedures of restraint known to cause death and/or substantial bodily harm;

(f)   The failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;

(g)   The negligent handling of evidence and witnesses;

(h)   The negligent investigation into the conduct of SMITH, HUNTSMAN and the events relating to Decedent's death and/or failure of LVMPD to conduct a prompt and thorough investigation into the actions/inactions of SMITH and HUNTSMAN;

(i)   Violating LVMPD's policy regarding use of deadly force;

(j)   Restraining DECEDENT while DECEDENT was suffering from a mental disability and paranoid delusions;

(k)   For giving inadequate verbal warnings and commands, and not providing DECEDENT an opportunity to comply;

(l)   Failing to render medical, aid and assistance to DECEDENT;

(m)   the placement of vulnerable, disabled persons in a prone position with body weight on top of them resulting in positional asphyxia.

174.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.

175.   As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and has been injured in mind and body. Plaintiff ROCHELLE SCOTT has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT and will continue to be so deprived for the remainder of her natural life.

176.   LVMPD is vicariously liable for the wrongful acts of SMITH, HUNTSMAN, and DOES 1-5, because they acted under color of law and within the course and scope of their employment as police officers for the LVMPD.

177.   Upon information and belief, the negligent acts of SMITH, HUNTSMAN and DOES 1-5, which resulted in bodily harm, including death to DECEDENT were vicariously condoned by LVMPD.

178.   Plaintiffs seeks all permissible damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for her grief, sorrow, loss of probable support, companionship, society,

1  comfort and consortium, and damages for pain, suffering of the DECEDENT, any penalties,

2  including, but not limited to, exemplary and punitive damages.

3       179.   Plaintiffs also seeks statutory attorneys' fees and costs under this claim.

4                              **PRAYER FOR RELIEF**

5       WHEREFORE, Plaintiff ROCHELLE SCOTT individually, as surviving daughter of

6  Decedent ROY ANTHONY SCOTT, and as SPECIAL ADMINISTRATORS of Decedent's estate

7  along with FREDRICK WAID, requests entry of judgment in their favor and against Defendants

8  LVMPD, KYLE SMITH, THEODORE HUNTSMAN and DOES 1-10, inclusive, as follows:

9       A.     For compensatory damages, including both survival damages and wrongful death

10             damages under federal and state law, in an amount to be proven at trial;

11      B.     For hedonic damages;

12      C.     For funeral and burial expenses;

13      D.     For medical billing and expenses;

14      E.     For punitive damages against individual Defendants in an amount to be proven at

15             trial;

16      F.     For interest;

17      G.     For reasonable costs of this action, court costs, and attorneys' fees; and

18      H.     For such other and further relief as the Court may deem just, proper, and appropriate.

19  DATED:  October 7, 2020              PETER GOLDSTEIN LAW CORP

20                                       By:  /s/ Peter Goldstein
                                              Peter Goldstein
21                                       Attorneys for Plaintiffs
                                         *ROCHELLE SCOTT, individually, and as co-special*
22                                       *administrator of the estate of ROY ANTHONY SCOTT;*
                                         *and FREDRICK WAID, as co-special administrator*
23                                       *of the estate of ROY ANTHONY SCOTT*

24

25  ///

26  ///

27  ///

28  ///

32

1

## **DEMAND FOR JURY TRIAL**

2

    Plaintiffs hereby demand a trial by jury.

3

DATED:  October 7, 2020          PETER GOLDSTEIN LAW CORP

4

5

                  By:  /s/ Peter Goldstein
                       Peter Goldstein

6

                 Attorneys for Plaintiffs
                 *ROCHELLE SCOTT, individually, and as co-special*

7

                 *administrator of the estate of ROY ANTHONY SCOTT;*
                 *and FREDRICK WAID, as co-special administrator*

8

                 *of the estate of ROY ANTHONY SCOTT*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28